**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MARISOL RIVERA COLLAZO,

      Plaintiff,

         v.                         CIVIL NO.: 19-1278 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**OPINION AND ORDER**

Pending before the court is Ms. Marisol Rivera Collazo's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 19. Plaintiff alleges that the administrative law judge erred at step three of the sequential process by not finding that she met the requirements of Listings 12.04 and 12.06. It is also claimed by Plaintiff, among other allegations, that the administrative law judge's residual functional capacity determination is not supported by substantial evidence.

**I.    Procedural and Factual Background**

On December 20, 2013, Plaintiff filed an application for Social Security benefits alleging that on May 6, 2013 ("the onset date"), she became unable to work due to disability. Tr. 23.[1] Prior to the onset date, Plaintiff worked as an office worker and secretary. Tr. 30. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 25. Plaintiff's disability claim was denied on June 27, 2014, and upon reconsideration. Tr. 23. Thereafter, Plaintiff requested a hearing which was held on November 4, 2016 before

---

[1] "Tr." refers to the transcript of the record of proceedings.

Administrative Law Judge Victoria Ferrer ("the ALJ"). Tr. 23, 36-46. On January 5, 2017, the

ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 31. Thereafter, Plaintiff

requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

review. Tr. 1-4. Plaintiff filed a complaint on March 28, 2019. ECF No. 1. Both parties have

filed supporting memoranda. ECF Nos. 19, 24

## II.    Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether her factual

findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based

on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d

333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15,

16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

4

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 25. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: anxiety, hydrocephalus, status/post shunt placement. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting or carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight hour workday; sit for about six hours in an eight hour workday; push and pull the same extent as lift and carry; should not drive motor vehicles in the performance of work activities; never work in high exposed places; occasionally climb ladders; frequently work with hazardous machinery with moving and mechanical parts; frequently work with sharp objects; able to perform simple, routine, repetitive tasks; able to understand, remember, and carry out simple instructions and could have frequent interaction with the public.

Tr. 27. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as an office worker or secretary. Tr. 30. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 30-31. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: marker, cashier, and router clerk. Tr. 30-31, 41-42. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 31.

5

### III.    Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on four grounds. ECF No. 19, at 9. First, Plaintiff argues that the ALJ erred in not finding that she satisfied the requirements of Listings 12.04 and 12.06. Id. at 9-12. Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. Id. at 12-14. Next, it is claimed by Plaintiff that the ALJ erred by not finding her allegations regarding the severity of her functional limitations and pain credible. Id. at 14-17. Lastly, Plaintiff alleges that the ALJ erred at step five in the sequential process by finding that there was work existing in significant numbers in the economy that she could perform. Id. at 17-18.

#### A. The ALJ's Step Three Determination

Plaintiff alleges that she meets the requirements of Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Id. at 9-12. Specifically, Plaintiff contends that she has marked limitations in the Paragraph B criteria. Id. A claimant bears the burden to demonstrate that he meets all the specified duration and objective medical requirements of a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Paragraph B of Listings 12.04 and 12.06 each require that the claimant's mental impairment result in at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration.[2] See 20 C.F.R.

---

[2] The medical criteria used to evaluate claims involving mental disorders have been revised, effective January 17, 2017. Kreischer v. Berryhill, Civ. No. 18-1034, 2019 WL 2177916, at *3 (S.D. Cal. May 20, 2019). The revised criteria apply to ALJ decisions issued after that date. The ALJ's decision in the case at bar was issued on January 5, 2017, so the old criteria apply. Tr. 31.

Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B; Ruperto v. Comm'r of Soc. Sec., Civ. No. 14-1673, 2016 WL 1239927, at *2 (D.P.R. Mar. 28, 2016); Diaz v. Colvin, Civ. No. 14-13363, 2016 WL 2992909, at *6 (D. Mass. Mar. 28, 2016) ("the criteria of Paragraph B under both Listing 12.04 and 12.06 are identical.").

In the case at hand, the ALJ found that Plaintiff did not satisfy the criteria of Paragraph B. Tr. 25-27. In activities of daily living, the ALJ found that Plaintiff had mild restriction. Tr. 26. The ALJ noted that while Plaintiff reported no motivation or energy, she was able to care for her own needs and those of her husband and two children. Tr. 26. In May 2014, Plaintiff reported daily activities including cooking, washing dishes, doing laundry, cleaning furniture, and sweeping and mopping the floors. Tr. 401. As to maintaining social functioning, the ALJ found only a mild limitation as Plaintiff reported in May 2014 that she attended church weekly, participated in family activities, interacted with other people, had no problems with authority, and indicated that she could follow a conversation and be helpful and considerate to others. Tr. 402.

The ALJ found that Plaintiff had a moderate limitation in maintaining concentration, persistence, or pace. Tr. 26. The ALJ noted that some medical records indicated inattentiveness, while others suggested that Plaintiff's attention was adequate. Tr. 26. For example, progress notes from treating psychiatrist Dr. Franklin Rivera Carrasquillo ("Dr. Rivera Carrasquillo") indicated that Plaintiff had an anxious appearance and decreased concentration.[3] Tr. 409, 419, 480, 484, 486, 490, 494. On the other hand, in May 2014, examining clinical psychologist Dr. Margarita Maldonado Galarza ("Dr. Maldonado") conducted a mental status examination of Plaintiff and indicated that she appeared alert, responsive, and was cooperative during the full

---

[3] These progress notes correspond to Dr. Rivera Carrasquillo's treatment of Plaintiff in December 2013, August 2014, December 2014, May 2015, August 2015, October 2015, February 2016.

interview and the evaluation. Tr. 402. Dr. Maldonado opined that Plaintiff's level of attention

and concentration was acceptable and that she displayed a good level of vigilance during

memory tests. Tr. 403. The ALJ noted that Plaintiff was able to answer all the questions during

the hearing without difficulty and maintained enough concentration to explain and describe her

impairments and limitations. Tr. 26. See Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) ("the

responsibility for weighing conflicting evidence, where reasonable minds could differ as to the

outcome, falls on the Commissioner and his designee, the ALJ."); López v. Astrue, Civ. No. 07-

1188, 2008 WL 11495169, at *6 (D.P.R. Mar. 31, 2008) ("the ALJ's resolution must be affirmed

even if the record arguably could justify a different conclusion, so long as it is supported by

substantial evidence."). Lastly, the ALJ properly noted that the record did not support repeated

episodes of decompensation as there is only one record of a hospitalization lasting a single day.

Tr. 26, 441-42.

In support of her allegations that she meets the Paragraph B criteria, Plaintiff cites to

medical opinions from treating clinical psychologist Dr. Héctor J. Marrerro ("Dr. Marrerro") and

Dr. Rivera Carrasquillo. ECF No. 19, at 10-12. In February 2014, Dr. Marrero diagnosed

Plaintiff with major depression and anxiety disorder and stated: "Due to her physical condition,

especially her hydrocephalus, [Plaintiff] was medical [sic] recommended to quit her job. At

present time she does not possess the physical condition nor the mental capacity to be in a

competitive work setting and complete a normal workday without interruptions." Tr. 377. In

June 2014, Dr. Marrero opined that Plaintiff's condition required continued medical assistance,

the use of psychotropics, and psychotherapy. Tr. 407.

In November 2016, Dr. Marrero completed a mental residual functional capacity

questionnaire and opined that Plaintiff had numerous moderate and marked limitations in

understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 503-04. For example, Dr. Marrerro opined that Plaintiff was moderately limited in her ability to understand and remember short and simple instructions and markedly limited in her ability to understand and remember detailed instructions. Tr. 503. Regarding Plaintiff's concentration abilities, Dr. Marrerro found that that Plaintiff was moderately limited in her ability to carry out short and simple instructions and to make simple-worked related decisions, but that she was markedly limited in her ability to sustain an ordinary routine without supervision and to maintain attention and concentration for extended periods. Tr. 503. Lastly, for social interaction, Dr. Marrero opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public and markedly limited in her ability to get along with coworkers and to accept criticism from supervisors. Tr. 504.

The ALJ assigned "slight weight" to Dr. Marrero's opinions because they were not supported by the record evidence as a whole and her symptoms improved with medications. Tr. 29. In February 2014, treating neurosurgeon Dr. Ramón Del Prado ("Dr. Del Prado") reported that Plaintiff's anxiety decreased with medications. Tr. 378. In May 2014, Dr. Maldonado conducted a mental status evaluation and opined that Plaintiff did not meet the requirements of a diagnosis of "major depressive disorder or certain anxiety disorder," and that she had a mild "attention deficit / hyperactivity disorder." Tr. 405. Plaintiff reported to Dr. Maldonado that her daily activities consisted of cooking, washing dishes, doing laundry, cleaning furniture, and mopping the floor. Tr. 401. Plaintiff also reported that she attended church weekly, participated in family activities, could interact with others and follow a conversation, and did not have a problem with authority. Tr. 401-02. Dr. Maldonado observed that Plaintiff was well groomed, cooperative, alert, responsive, and had good eye contact. Tr. 402. Dr. Maldonado opined that

Plaintiff had organized and coherent thought process and had adequate immediate and recent memory, sustained remote memory, and impaired short-term memory. Tr. 403. Dr. Maldonado also found that Plaintiff had acceptable attention and concentration and average intellectual ability. Tr. 403-04.

In September 2014 and June 2015, Dr. Rivera Carrasquillo indicated that Plaintiff's medication for her depressive and anxiety disorders was well tolerated and that it helped to control her symptoms. Tr. 488, 498. Dr. Rivera Carrasquillo's progress notes from May 2016 reflect that Plaintiff reported that her symptoms were generally controlled with medications. Tr. 478. In October 2016, while Plaintiff had an anxious mood, Dr. Rivera Carrasquillo noted that Plaintiff was alert, oriented in all spheres, displayed logical thought process, and maintained fair insight and judgment. Tr. 473-75. Dr. Rivera Carrasquillo also noted that Plaintiff reported taking her medications as prescribed with no side-effects. Tr. 474. Thus, the ALJ's decision to assign slight weight to Dr. Marrerro's opinions was supported by substantial evidence.

Plaintiff argues that Dr. Rivera Carrasquillo's treatment notes also support a finding that she satisfied the Paragraph B criteria. ECF No. 19, at 11-12. In October 2013, Dr. Rivera Carrasquillo diagnosed Plaintiff with major depression disorder and generalized anxiety disorder. Tr. 435. Subsequent progress notes from Dr. Rivera Carrasquillo indicated that Plaintiff had an anxious appearance, depressed mood, and decreased concentration.[4] Tr. 409, 419, 474, 476, 480, 484, 486, 490, 494. Dr. Rivera Carrasquillo, however, also opined that Plaintiff was oriented in all spheres, possessed logical thought process and intact fund of knowledge, exhibited good impulse control, and maintained fair insight, judgment, and reliability.[5] Tr. 164, 474-80. The ALJ

---

[4] These progress notes correspond to Dr. Rivera Carrasquillo's treatment of Plaintiff in December 2013, August 2014, December 2014, May 2015, August 2015, October 2015, February 2016, May 2016, October 2016.

[5] These progress notes refer to Dr. Rivera Carrasquillo's treatment of Plaintiff in February 2016, May 2016, and October 2016.

specifically referenced Dr. Rivera Carrasquillo's progress notes throughout the decision on numerous occasions and determined that they did not support a finding that Plaintiff's mental impairments satisfied the requirements of Listings 12.04 and 12.06. Tr. 26, 28-29. Plaintiff has not cited to any evidence where Dr. Rivera Carrasquillo assessed marked limitations in mental functioning within a work setting. Plaintiff is essentially asking the court to reweigh the evidence more favorably to her, but Plaintiff's alternate interpretation is not enough to assign error to the ALJ's findings. See Doucer v. Astrue, Civ. No. 12-2123, 2013 WL 12126354, at *1 (1st Cir. May 24, 2013) ("Weighing the evidence was the ALJ's prerogative."); Rodríguez Roche v. Comm'r of Soc. Sec., 265 F. Supp. 2d 177, 181 (D.P.R. 2003) ("Courts are not to re-weight [sic] the evidence or substitute its judgment for that of the Commissioner when the record before the administrative agency has been comprehensive and thorough."). The ALJ's step three determination that Plaintiff did not meet the Paragraph B criteria of Listings 12.04 and 12.06 is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

### B. The ALJ's RFC Determination

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the record supports greater functional limitations. ECF No. 19, at 12-14. The ALJ is responsible for formulating a claimant's RFC. See 20 C.F.R. § 404.1546(c). "In making an RFC assessment, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources." Sánchez-Velázquez v. Comm'r of Soc. Sec., Civ. No. 14-1723, 2016 WL 917913, at *3 (D.P.R. Mar. 10, 2016) (citations omitted); see 20

C.F.R. § 404.1545(a)(3). The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

In reaching Plaintiff's RFC finding, the ALJ reasonably considered the medical evidence in the record to find that Plaintiff could perform a range of light work. Tr. 27-30. The ALJ noted that Plaintiff had a shunt placed in 1986 due to hydrocephaly and that she complained of frequent headaches and anxiety. Tr. 28, 463. In May 2013, Dr. Del Prado reported that Plaintiff was hydrocephalic and having headaches and severe anxiety. Tr. 383-85. It was recommended by Dr. Del Prado that she rest for three months. Id. Tr. 378. In February 2014, Dr. Del Prado indicated that her headaches persisted, but her anxiety decreased with medication. Tr. 378. Dr. Del Prado also found that her fundoscopic exam was normal, that the valve pumped well, and he noted that an October 2013 CT scan of Plaintiff's head exhibited normal findings. Id. Subsequent progress notes from Dr. Del Prado indicated that her fundoscopic exams were normal, the valve pumped well, and there were no findings of paresis or sensory loss.[6] Tr. 446-461.

In May 2014, examining internist Dr. Nilma E. Rosado Villanueva ("Dr. Rosado") performed a physical examination and found that Plaintiff was cooperative, well-groomed, and did not need assistance to sit, stand, get up or down, or move to table during the examination. Tr. 388. Plaintiff had no tenderness or pain to palpation in the spine. Tr. 388. Dr. Rosado found that Plaintiff achieved full range of motion in her shoulders, elbows, wrists, fingers, knees, hips, ankles, cervical spine, and lumbar spine. Tr. 394-95. Plaintiff had grossly intact motor and sensory function, full (5/5) strength, and her hand function had no limitations as she was able to

---

[6] These progress notes refer to Dr. Del Prado's treatment of Plaintiff in June 2014, April 2015, November 2015.

grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. Tr. 388, 392. Dr. Rosado also observed that Plaintiff's gait was normal and she had full strength in her lower extremities with adequate balance and coordination. Tr. 393. In May 2014, examining radiologist Dr. Germán Chaves ("Dr. Chaves") found that x-rays of Plaintiff's chest were normal. Tr. 390.

In March 2016, treating neurosurgeon Dr. Eric Carro Figueroa ("Dr. Carro") examined Plaintiff and diagnosed her with obstructive hydrocephalus. Tr. 462. Dr. Carro found that the "valve depresses and refills ok" and that there were "no gross changes in neurological exam." Tr. 462-63. In March 2016, examining radiologist Dr. José Rivera Rivera ("Dr. Rivera Rivera") found that an x-ray of the cervical spine showed no gross fractures, satisfactory alignment, and preserved disc spaces. Tr. 518. Dr. Rivera Rivera also reported that an x-ray of the thoracic spine showed that the vertebral bodies, disc spaces, and posterior elements appeared well aligned and preserved and there was normal bone density. Tr. 519. Lastly, Dr. Rivera Rivera found that a ventriculoperitoneal shunt study revealed that the shunt appeared intact and the skull, neck, chest, and abdomen appeared "otherwise unremarkable." Tr. 521

The ALJ noted that Plaintiff sought treatment with treating physiatrist Dr. Rael Bernier Soto ("Dr. Bernier") in May 2016 for cervical and low back pain worsened by prolonged standing and heavy lifting. Tr. 29, 507. On examination, Plaintiff had pain with flexion at the cervical spine, lower back pain, and tenderness and pain at the right shoulder. Tr. 29, 508. Plaintiff also had pain with rotation at the lumbar spine. Tr. 508. Dr. Bernier noted that Plaintiff was alert and oriented with functional active range of motion in all extremities, full muscle strength, and normal deep tendon reflexes. Tr. 507-08. Plaintiff was prescribed physical therapy and nonsteroidal anti-inflammatory drugs ("NSAIDs"). Tr. 509. Dr. Bernier's subsequent

treatment notes from July and August 2016 reflected that further physical examination findings remained unchanged. Tr. 510-17. The ALJ noted that although Plaintiff returned for treatment, no physical therapy records were submitted. Tr. 29.

Plaintiff's mental RFC finding is likewise supported by substantial evidence in the record.[7] In May 2014, Dr. Maldonado found that Plaintiff had adequate speech; clear, coherent, relevant, logical, and sequential communication; organized and coherent thought process; adequate immediate and recent memory and sustained remote memory; acceptable attention and concentration; and average intellectual ability. Tr. 401-05. Plaintiff also reported daily activities including cooking, washing dishes, doing laundry, cleaning furniture, and sweeping and mopping the floors. Tr. 29, 401. In June 2014, state agency psychiatrist Dr. Luis Rodríguez ("Dr. Rodríguez") reviewed the record and opined that Plaintiff's mental impairments caused only mild limitations in her activities of daily living, mild limitations in social functioning, mild limitations in maintaining concentration, persistence or pace, and she had not experienced repeated episodes of decompensation. Tr. 194. In September 2014, state agency psychiatrist Dr. Wanda Machado ("Dr. Machado") reviewed the record upon reconsideration and concurred with Dr. Rodríguez's opinion. Tr. 205-06. The ALJ assigned little weight to the state agency physicians' mental assessments because they did not consider the combined effects of Plaintiff's impairments and the record reflected that Plaintiff was more limited than their findings. Tr. 29-30. Thus, the ALJ's RFC determination is supported by substantial evidence. See Evangelista, 826 F.2d at 144, supra at 11.

_____

[7] In formulating Plaintiff's mental RFC determination, the ALJ also appropriately considered the opinions of Dr. Rivera Carrasquillo and Dr. Marrero that were previously discussed in the section regarding the ALJ's step three determination. See supra, pgs. 8-11.

### C. The ALJ's Rejection of Plaintiff's Allegations Regarding the Severity of her Functional Limitations and Pain

Next, Plaintiff argues that the ALJ erred in finding that her allegations regarding the severity of her functional limitations and pain were not consistent with the medical evidence. ECF No. 19, at 14-17. In her August 2014 function report, Plaintiff alleges that she "cannot do too much because as soon as I start with something I get tense and get headaches do [sic] not let me continue." Tr. 62. Plaintiff also alleges that she does not have any motivation to start on any chores and that she does not go out alone because "I fear that something may happen to me given that the pain is unbearable, and horrible." Tr. 63. It is also claimed by Plaintiff that she cannot lift more than ten pounds, she has difficulty concentrating, and she can only walk for fifteen minutes before needing to stop and rest. Tr. 65. Under the regulations, the ALJ must consider a claimant's symptoms in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. at § 404.1529(b). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and consider whether the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record documenting a claimant's limited capacity for work. Id. at § 404.1529(c).

In the case at hand, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 27. Then, it was determined by the ALJ that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. In her decision, the ALJ noted that Dr. Del Prado's February 2014 progress notes indicated that Plaintiff's headaches persisted, but her anxiety decreased with medication. Tr. 378.

15

Subsequent progress notes from Dr. Del Prado indicated that her fundoscopic exams were normal, the valve pumped well, and there were no findings of paresis or sensory loss.[8] Tr. 446-461. In May 2014, Dr. Rosado performed a physical examination and found that Plaintiff achieved full range of motion in her shoulders, elbows, wrists, fingers, knees, hips, ankles, cervical spine, and lumbar spine. Tr. 394-95. Plaintiff was also found with grossly intact motor and sensory function, full (5/5) strength, and her hand function had no limitations. Tr. 388, 392. Dr. Rosado also observed that Plaintiff's gait was normal and she had full strength in her lower extremities with adequate balance and coordination. Tr. 393. In May 2014, Dr. Maldonado found that Plaintiff had adequate speech; clear, coherent, relevant, logical, and sequential communication; organized and coherent thought process; adequate immediate and recent memory and sustained remote memory; acceptable attention and concentration; and average intellectual ability. Tr. 401-05. Plaintiff also reported daily activities including cooking, washing dishes, doing laundry, cleaning furniture, and sweeping and mopping the floors. Tr. 29, 401.

In March 2016, Dr. Rivera Rivera found that x-rays of the cervical and thoracic spine exhibited normal findings. Tr. 518-19. Dr. Rivera Rivera also noted that a ventriculoperitoneal shunt study revealed that the shunt appeared intact and the skull, neck, chest, and abdomen were otherwise unremarkable. Tr. 521. In May 2016, Dr. Bernier noted that Plaintiff was alert and oriented with functional active range of motion in all extremities, full muscle strength, and normal deep tendon reflexes. Tr. 507-08. Thus, the ALJ's decision not to give full credit to Plaintiff's allegations regarding the severity of her functional limitations is supported by substantial evidence because her allegations were not consistent with the record medical evidence.

---

[8] These progress notes refer to Dr. Del Prado's treatment of Plaintiff in June 2014, April 2015, November 2015.

Plaintiff also claims that the ALJ erred by not including a thorough discussion of the Avery factors in her decision. ECF No. 19, at 14-15. In evaluating a claimant's subjective complaints of pain, the ALJ must consider the Avery factors. See Vargas-López v. Comm'r of Soc. Sec., 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The Avery factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted); Ortiz v. Colvin, Civ. No. 13-12793, 2015 WL 4577106, at *13 (D. Mass. July 20, 2015) ("While the ALJ must consider each of the factors, there is no requirement of specific findings as to each of the factors being expressed in the written decision.").

The ALJ considered the Avery factors throughout the decision. Regarding the first two factors, location of alleged pain and aggravating factors, Plaintiff reported that the pain from her headaches is unbearable. Tr. 63. The ALJ noted that in May 2016 Plaintiff sought treatment for cervical and low back pain worsened by prolonged standing and heavy lifting. Tr. 29, 507. Dr. Bernier found that Plaintiff had pain with flexion at the cervical spine and tenderness as well as pain at the right shoulder. Tr. 29, 508. Plaintiff also had pain with rotation at the lumbar spine. Tr. 508. The third factor concerning Plaintiff's pain medication was also considered as the ALJ noted that Dr. Bernier prescribed NSAIDs for her pain. Tr. 29, 509.

Regarding the fourth factor, treatment other than medication, it was noted in the ALJ's decision that Dr. Bernier prescribed physical therapy, but no physical therapy records were submitted. Tr. 29, 509. The ALJ also considered the fifth factor, functional limitations, as Plaintiff disclosed in her function report that she cannot lift more than ten pounds, it causes her pain to pick up objects from the floor, and she can only walk fifteen minutes before needing to stop and rest. Tr. 26, 65. Regarding the sixth factor, activities of daily living, the ALJ noted that Dr. Maldonado's mental status examination in May 2014 revealed that Plaintiff reported daily activities including cooking, washing dishes, doing laundry, cleaning furniture, and sweeping and mopping the floors. Tr. 29, 401. Thus, contrary to Plaintiff's argument, the ALJ considered the Avery factors in her decision. See Avery, 797 F.2d at 28.

**D. The ALJ's Step Five Determination**

Lastly, Plaintiff alleges that the ALJ erred at step five in the sequential process by finding that there was work that she could perform existing in significant numbers in the national economy. ECF No. 19, at 17-18. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Plaintiff claims that the ALJ's hypothetical to the VE was improper because it was based on an RFC to perform light work with additional restrictions. ECF No. 19, at 17-18; Tr. 27. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash her RFC argument at this final step. See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017). The ALJ provided an accurate hypothetical to the VE, and thus, the step five determination is supported by substantial evidence. See Berrios-López v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) ("The ALJ was entitled to credit the vocational

expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.").

IV.     **Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2020.

s/Marcos E. López
U.S. Magistrate Judge